2 10CT w/0

(17)

4/2/01

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

MAR 3 0 2001

MARY E. D'ANDREA, CL
Per ____ Deputy Clerk

Samson Omosefunmi :
:
v. :
: Civil No. 1:CV-00-2228
York County Prison, et al. : (Judge William W. Caldwell)

**DEFENDANT JYL HUMMEL'S, MOTION TO DISMISS**

Defendant Jyl Hummel, Health Services Administrator (Hummel), by and through her attorneys, Fox Rothschild, O'Brien & Frankel, LLP, files the within Motion to Dismiss Plaintiff's Complaint and avers as follows:

1. This is a *pro se* civil rights action (42 U.S.C § 1983) instituted by plaintiff Samson Omosefunmi (Omosefunmi).

2. Samson Omosefunmi currently is an INS detainee at the Buffalo Federal Detention Facility, although between December 7, 2000, and December 22, 2000, he was a detainee at the York County Prison.

3. In his complaint, Mr. Omosefunmi alleges numerous violations of his civil rights while he was detained at the York County Prison for two weeks.

4. With respect to medical defendant Hummel, plaintiff claims that he was denied medical treatment and that various Jane Doe medical personnel refused to treat him on or about December 13, 2000, after he allegedly passed out from massive chest pains.

5. Pursuant to this Court's Order of February 2, 2001 the court dismissed the retaliation claim that defendant Hummel's Medical Staff denied plaintiff his medications pursuant to 28 U.S.C. § 1915(e)(2)(b)(2ii).

6. Throughout the complaint, plaintiff makes numerous vague allegations that Nurse Hummel somehow denied plaintiff access to adequate medical care and treatment.

7. Moreover, all the allegations regarding a denial of care took place between December 7, 2000, and December 22, 2000.

8. The records indicate that plaintiff had an initial medical screening and health evaluation on admission to the prison by the medical staff on December 7, 2000. At that time he was awake, alert, and in no acute distress. He had complaints of back and neck problems due to a previous accident, as well as hypertension and elevated cholesterol. The patient was walking with a walker and had a neck collar related to multiple medical problems. A psychiatric referral was also made on the same date.

9. On December 7, 2000, the patient was housed in the medical area as a result of these problems. Various medications were prescribed for his numerous medical problems.

10. Patient was seen on any number of occasions by a variety of staff.

11. On December 12, 2000, the patient was seen by psychiatry because he was taking medications for depression, although the patient refused to speak to the psychologist or the physician and demanded to speak to someone from INS. His medications were continued.

12. According to the records, on or about December 13, 2000, at or about 5:20 p.m., the nursing staff was called to plaintiff's cell because of an alleged fall. On assessment the patient was lying on the floor, at which point vital signs were taken and it was observed that he had unlabored exaggerated respirations. The plaintiff appeared to be unresponsive upon arrival but immediately responded to verbal stimuli upon entering the cell. He had positive neurologic responses and there was nothing disturbed in the cell to indicate that a fall had taken place. The patient complained of chest pain, though the EKG had a normal appearance. His oxygen level

was evaluated and was well within normal limits.  His chest pain was also producible upon palpation, which indicates that it was not of cardiac origin.  There was no shortness of breath or any other neurologic abnormalities.  Plaintiff's blood pressure was elevated, although the patient refused to take his blood pressure medication claiming he was on a hunger strike.

13.    As of December 16, 2000, the plaintiff refused any type of physical examination saying that he did not want anyone touching him.

14.    The patient left the facility on approximately December 22, 2000, with no apparent medical distress and was transferred to another medical facility for non-medical reasons.  At no time did this patient suffer from a serious medical need.

15.    In plaintiff's complaint he does not provide a sufficient factual basis, or indeed, one iota of evidence, to establish any claim of deliberate indifference to a serious medical need that he was denied medical treatment.

16.    Accordingly, because the undisputed evidence clearly establishes that plaintiff was not denied any medical treatment at any time for any reason, this court must grant our Motion to Dismiss/Motion for Summary Judgment in favor of Jyl Hummel and against plaintiff in all respects.

WHEREFORE, defendant, Hummel respectfully requests that her Motion to Dismiss/Motion for Summary Judgment be entered in her favor and against plaintiff on all claims.

Jacqueline M. Carolan

Jacqueline M. Carolan, Esquire
FOX, ROTHSCHILD, O'BRIEN &
FRANKEL, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2863
Attorneys for Jyl Hummel

Dated: 3/28/01

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Samson Omosefunmi | : | |
| | : | |
| v. | : | |
| | : | Civil No. 1:CV-00-2228 |
| York County Prison, et al. | : | (Judge William W. Caldwell) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JYL HUMMEL'S, MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case involves alleged violations of plaintiff, Samson Omosefunmi's civil rights under 42 U.S.C. § 1983. Plaintiff, currently an INS detainee at the Buffalo Federal Detention Center, was a detainee at York County Prison between December 7, 2000, and December 22, 2000. Plaintiff raises numerous claims although by Order of the Court on February 2, 2001, almost all claims were dismissed including a retaliation claim that defendant, Hummel and the medical staff denied him medications. The retaliation claim was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii). The court found that the only claim that remained against defendant was a civil rights claim for inadequate medical treatment.

Plaintiff has failed to state a legally cognizable claim against defendant Hummel for inadequate medical treatment or denial of medical treatment pursuant to 42 U.S.C. § 1983 as he has alleged no facts that would establish such claims. Indeed, as the applicable decisions will show, there is no basis for any alleged civil rights violation under 42 U.S.C. § 1983. Rather, the conduct as alleged and supplemented with supporting medical documents establishes that plaintiff was provided with all necessary medical treatment. Thus, defendant Hummel moves

this court to grant the Motion to Dismiss and/or enter Summary Judgment in Jyl Hummel's favor on all claims brought against him.

## II. STATEMENT OF FACTS

Plaintiff is currently an INS detainee at the Buffalo Federal Detention Facility. Between December 7 and December 20, 2000, plaintiff was a detainee at the York County Prison at the time this lawsuit was filed. Plaintiff claims that he was denied medical care and treatment while at York County Prison. Jyl Hummel has reviewed the relevant medical records and is familiar with the medical care and evaluation of plaintiff while he was a detainee at York County Prison. See Exhibit "A"., Hummel Affidavit with attached medical records, at ¶¶ 1-2.

Plaintiff had an initial medical screening and health evaluation on admission to the prison by the medical staff on December 7, 2000. Id. at 3. At that time he was awake, alert, and in no acute distress. Id. He had complaints of back and neck problems related to a previous accident as well as hypertension and elevated cholesterol. Id. He was walking with a walker and had a neck collar related to multiple medical problems. Id. A psychiatric referral was also made on the same date. Id.

On December 7, 2000, the inmate was housed in the medical area as a result of the above problems and was prescribed various medications related to his numerous medical problems on this same date. Id. at ¶¶ 4, 5 The patient was evaluated and it was determined that he was alert and in no apparent distress. Id. at ¶¶ 6.

On December 12, 2000, the patient was seen by the psychiatrist because he was taking medications for depression. Id. at 7. The patient refused to speak to the psychologist or the physician and demanded to speak to someone from INS. Id.

On December 13, 2000, at or about 5:20 p.m., the nursing staff was called to plaintiff's cell because of an alleged fall. Id. at ¶ 8. On assessment the patient was lying on the floor, at which point vital signs were taken and it was observed that he had unlabored but exaggerated respirations. Id. The inmate appeared to be unresponsive upon arrival but immediately responded to verbal stimuli upon entering the cell. Id. He had positive neurologic responses and there was nothing disturbed in the cell which would indicated a fall had taken place. Id. The patient complained of chest pain, although an EKG had a normal appearance. Id. His oxygen level was evaluated and it was within normal limits. Id. His chest pain was producible upon palpation, which would indicate that it was not of cardiac origin. Id. There was no shortness of breath or any other neurologic abnormalities. Id. The patient's blood pressure was elevated, although the patient refused to take his blood pressure medication claiming he was on a hunger strike. Id. As of December 16, 2000, the patient was refusing any type of physical examination saying that he did not want anyone touching him. Id. at ¶ 9.

The patient left the York County Prison facility on approximately December 22, 2000, in no apparent medical distress and was transferred to another facility for non-medical reasons. Id. at ¶ 10. While at York County Prison the patient, Samson Omosefunmi, received appropriate care and was not suffering from a serious medical need. Id. at ¶¶ 12-13.

## II. STANDARD OF REVIEW

Jyl Hummel moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because of plaintiff's "failure to state a claim upon which relief can be granted" or, alternatively, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

When considering a motion to dismiss, the Court is to take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). The complaint shall be dismissed if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The court is permitted to consider the pleadings and matters of public record when considering a Motion to Dismiss. 5A C. Wright and A. Miller, Federal Practice and Procedure § 1357 (1990). See also Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988) (it is proper to take judicial notice of matters of public record outside the pleadings). Moreover, any written instrument attached to a pleading becomes a part of that pleading and may be considered when deciding a motion to dismiss. Fed. R. Civ. P. 10(c) (any written instrument which is an exhibit to a pleading is a part thereof for all purposes); Rose v. Bartle, 871 F.2d 331, 339-40 n.3 (3d Cir. 1989); Federal Practice and Procedure. See also Federal Practice and Procedure § 1357 (exhibits attached to the complaint may be taken into account by the court when deciding whether to grant a Rule 12(b)(6) motion). If this Court concludes that plaintiff's Complaint on its face fails to state a claim against Jyl Hummel, then dismissal under Rule 12(b)(6) is appropriate.

Alternatively, if the Court finds it necessary to consider plaintiff's medical records and Jyl Hummel's affidavit when assessing the viability of plaintiff's claims, Jyl Hummel's Motion to Dismiss should be converted into a Motion for Summary Judgment. Fed. R. Civ. P. 12(b)(6); Carter v. Stanto, 405 U.S. 669, 671 (1972); Kubwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Furthermore, a factual dispute is only "material" if it might affect the outcome of the case. Id. at 248.

> The party seeking summary judgment always bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. If this initial burden is met, then the non-moving party bears the burden of demonstrating that there are disputes of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, the non-moving party must produce evidence to support its position, and may not rest on conclusory allegations or bare assertions. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Thus, if the Court considers plaintiff's medical records and Dr. Hummel's affidavit in its decision, then assessment under Rule 56(c) is appropriate.

## III. DISCUSSION

Plaintiff has attempted to allege a claim against Jyl Hummel for deliberate indifference to a serious medical need under 42 U.S.C. § 1983. For the reasons set forth below, Plaintiff's Complaint must be dismissed with prejudice.

Plaintiff seeks to recover under the Federal Civil Rights Act which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In other words, in order to prevail on a Section 1983 claim plaintiff must establish: (1) Jyl Hummel was a "state actor" and (2) he deprived plaintiff of a constitutional right. Setting aside the question of whether or not Jyl Hummel was a "state actor", we turn to the issue of whether he deprived plaintiff of a constitutional right.

The acknowledged standard to be applied in cases in which a plaintiff claims that his or her medical treatment during incarceration fell below the constitutional standards was set forth by the United States Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976). In order to recover under Section 1983, plaintiff must allege facts or omissions sufficiently harmful to evidence (1) deliberate indifference to (2) a serious medical need. Estelle, 429 U.S. at 105, 106. The Supreme Court reiterated this standard in Wilson v. Seiter, 501 U.S. 271, (1991); see also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

Deliberate indifference has been defined as subjective recklessness, or the actor's conscious disregard of substantial harm that may result from his or her actions. Farmer v. Brennan, 114 S. Ct. 1970, 1980 (1994). In other words, deliberate indifference exists when the defendant knows of and disregards an excessive risk to the plaintiff's health. Id. at 1979. Significantly, "an official's failure to alleviate a significant risk that he should have perceived but

did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 1979.

The seriousness of an inmate's medical need may be determined "by reference to the effect of denying the particular treatment." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). For example, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id. at 347.

The Third Circuit has held that allegations merely stating a claim for medical malpractice do not support a Section 1983 claim for deliberate indifference to a serious medical need. White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990). Once it is shown that the plaintiff received some care, "[c]omplaints directed at the wisdom or quality of the medical care received from medical personnel will not state an Eighth Amendment violation under § 1983, even if the treatment was negligent as to amount to malpractice." Hampton, 546 F.2d at 1081. Thus, a court will not "second-guess the propriety or adequacy of a particular course of treatment, which remains a question of sound professional judgment." Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988).

Plaintiff fails to state a claim for deliberate indifference to a serious medical need. The medical records demonstrate that plaintiff has had and continues to have the benefit of continuous and appropriate care with regard to his complaints. He was promptly treated on every occasion. Plaintiff has not demonstrated any significant medical risk that was disregarded, and there is no serious injury that has gone untreated. In fact, further attempts to treat plaintiff were frustrated by the patient's own refusal to allow physical examination. It is undisputed that plaintiff received medical care; plaintiff's complaint that he personally was not satisfied with it

does not suffice to state a Section 1983 claim as this Court will not second guess the propriety of treatment.

WHEREFORE, Jyl Hummel respectfully requests judgment in her favor and against plaintiff with prejudice.

## IV. CONCLUSION

Plaintiff provides no evidence of a serious medical need and/or that he was treated with deliberate indifference and denied medical treatment by Jyl Hummel. The undisputed evidence clearly establishes that plaintiff was not denied any medical treatment at any time for any reason. For these reasons the court must enter summary judgment in favor of Jyl Hummel.

Jacqueline M. Carolan

Jacqueline M. Carolan, Esquire
FOX, ROTHSCHILD, O'BRIEN &
FRANKEL, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2863
Attorneys for Jyl Hummel

Dated: 3/28/01

# EXHIBIT - 1

Received 03/27/2001 15:54 in 01:40 on line [2] for JCAROLAN * Pg 2/4

MAR 26 2001 6:06 PM FR FOX ROTHCHILD 215 299 2150 TO 695#27275#00001# P.02/04

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMSON OMOSEFUNMI : NO. 00-CV-2228
:
v. :
:
YORK COUNTY PRISON, et al. :

**AFFIDAVIT OF JYL HUMMEL, R.N.**

COMMONWEALTH OF PENNSYLVANIA:
ss.
COUNTY OF YORK :

1. I, Jyl Hummel, R.N., am the Health Services Administrator at York County Correctional Facility.

2. I have reviewed the relevant medical records and am familiar with the medical care and evaluation of Samson Omosefunmi while at detainee at York County Prison. A copy of the patient's medical records are attached hereto and incorporated herein.

3. Plaintiff had an initial medical screening and health evaluation on admission to the prison by the medical staff on December 7, 2000. At that time he was awake, alert and in no acute stress. He had complaints of back and neck problems due to a previous accident, as well as hypertension and an elevated cholesterol. He was walking with a walker and had a neck collar related to multiple medical problems. A psychiatric referral was also made on this same date.

4. On December 7, 2000, the patient was housed in the medical area as a result of these problems. On admission to the prison, the patient was prescribed aspirin, potassium chloride, Maxzide and Lopid for his numerous medical problems.

5. On December 8, 2000, additional medications consisting of Trazadone, Methocarbamol and Prozac were prescribed. An EKG was also ordered.

Received 03/27/2001 15:54 in 01:40 on line [2] for JCAROLAN * Pg 3/4
MAR 26 2001 6:06 PM FR FOX ROTHCHILD 215 299 2150 TO 695#27275#00001# P.03/04

6. On December 8, 2000, the patient was seen by Dr. Patricia Sauers, at which point the patient's past medical history was noted. The patient at that time was alert and in no apparent distress.

7. On December 12, 2000, the patient was seen by psychiatry because he was taking medication for depression. The patient refused to speak to the psychologist or the physician and demanded to speak to someone from INS. His medication was continued.

8. On December 13, 2000, at or about 5:20 p.m., the nursing staff was called to plaintiff's cell because of an alleged fall. On assessment the patient was lying on the floor, at which point vital signs were taken and it was observed that he had unlabored but exaggerated respirations. The inmate appeared to be unresponsive upon arrival but immediately responded to verbal stimuli upon entering the cell. He had positive neurologic responses and there was nothing disturbed in the cell which would indicate a fall had taken place. The patient complained of chest pain, although the EKG had a normal appearance. His oxygen level was evaluated and it was within normal limits. His chest pain was producible upon palpation, which would indicate that it was not of cardiac origin. There was no shortness of breath or any other neurologic abnormalities. The patient's blood pressure was elevated, although the patient refused to take his blood pressure medication claiming he was on a hunger strike.

9. As of December 16, 2000, the patient was refusing any type of physical examination saying that he did not want anyone touching him.

10. It is my understanding that the patient left the facility on approximately December 22, 2000 in no apparent medical distress and was transferred to another facility for non-medical reasons.

Received 03/27/2001 15:54 in 01:40 on line [2] for JCAROLAN * Pg 4/4

MAR 26 2001 6:08 PM FR FOX ROTHCHILD 215 299 2150 TO 695#27275#00001# P.04/

11. At all times material hereto, the patient, Samson Omosefunmi, received appropriate care.

12. At no time was there a deliberate indifference to this patient's medical needs.

13. At no time did this patient suffer from a serious medical need.

Jy Hummel, R.N.

Sworn to and subscribed before me this 27th day of March, 2001.

Notary Public

My Commission Expires: 1/12/04

Notarial Seal
Derek R. Trone, Notary Public
Springettsbury Twp., York County
My Commission Expires Jan. 12, 2004
Member, Pennsylvania Association of Notaries

PHI 253990v1 03/26/01

** TOTAL PAGE.04 **

EMSA CORRECTIONAL CARE

# HEALTH EVALUATION

CHARGES

BOND:

Date: 12/7/00 | I.D. #: 61639 | Date Booked: 12/7/00 | County: York

## ADMISSION DATA

Last Name: Omosefunmi First: Samson Middle:
Address: ?
Alias:
City: St.: Zip:
Birthplace: Nigeria
D.O.B. 12/25/56
Phone:
Religion: Christian
SS#: ?
Marital Status: S M D W (Sep)
Read/Write English? (Yes) No Other: Dialect - Nigeria
Previous Incarcerations (Date & Facility) 1994-1996 Massachusetts - INS since
Health Insurance? Y N Carrier: State:
Policy Number:
NOTIFY IN EMERGENCY: Name: Ellen Omosefunmi Relationship: daughter Address: ? Phone:
Helen

## MEDICAL DATA

Family Physician: Address: Phone:

Previous Hospitalizations/Surgeries/Major Illness/Current Illness: What? Where? 1992-Back injury - reinjured - Atlanta, Ga 2000 depression/anxiety, ↑ chol, ↑ B/P
OS - probs. See H & P

Medications: ☐ None Mavide HCTZ ASA Lorazepam Trazodone Fluoxetine KCl methocarbamol
Special Diet (Prescribed): lo chol

Allergies: NKA ☐ fish, seafood - hives, red meat - hives
Tetanus/Immunizations: Y N Dates:

**ANY ARRESTEE WHO IS UNCONSCIOUS, SEMICONSCIOUS, ACTIVELY BLEEDING, IN ACUTE PAIN, AND URGENTLY IN NEED OF MEDICAL ATTENTION SHOULD IMMEDIATELY BE REFERRED FOR EMERGENCY CARE.**

## CLINICAL OBSERVATIONS

1) Level of Consciousness: (X) Alert ( ) Oriented: time, place, person ( ) Lethargic ( ) Stuporous ( ) Comatose
Describe:

2) General Appearance: (X) Norm ( ) Abn.
Describe:

3) Substance Abuse: ( ) Yes (X) No ( ) Suspected ( ) Current Intoxication/Abuse ( ) Use ( ) Withdrawal Symptoms ( ) Drugs ( ) Alcohol
Describe: What kind? Amount/Frequency?
Last Use: (Time/Date):

4a) Behavior/Conduct: (X) Calm ( ) Cooperative ( ) Non-Violent ( ) Agitated ( ) Uncooperative ( ) Violent ( ) Manipulative ( ) Disorganized
Describe:

4b) Affect/Mood: (X) Normal ( ) Manic ( ) Depressed ( ) Euphoria ( ) Flat ( ) Confused ( ) Delusion ( ) Emotional Instability ( ) Hallucinations ( ) Hearing Voices
Describe:

5a) Is Patient at High Risk for Suicide? ( ) Yes (X) No
b) Does Pt. Describe Suicidal Thoughts or Ideations? ( ) Yes (X) No
c) Is there evidence of Self Mutilation ( ) Yes (X) No
d) High Risk Pt. may become Assaultive towards Staff? ( ) Yes (X) No

*If ANY of the above in #5 are circled, staff MUST describe here, include previous history and dates:*

6a) Communication Difficulties ( ) Yes (X) No
b) Memory Defects ( ) Yes (X) No
c) Hearing Impairement ( ) Yes (X) No
d) Speech Difficulties ( ) Yes (X) No

7) Physical Aids: ( ) None (X) Glasses here ( ) Contacts ( ) Hearing Aid ( ) Dentures ( ) Cane ( ) Crutches (X) Walker here ( ) Wheelchair ( ) Braces ( ) Artificial Limb (X) Other neck collar - here

8) A/Comments, Complaints, Symptoms: None ☐
S) Back, neck probs due to accidents, High B/P, ↑ chol
O) walks c̄ walker, neck collar.
A) mult. med probs
P) medical housing, Dr. call, psych referral

[signature] 12/7/00

EMSA CORRECTIONAL CARE

# INITIAL MEDICAL SCREENING

ARE YOU ILL? ☐ YES ☐ NO ARE YOU INJURED? ☐ YES ☐ NO HOUSING ______ PROP# ______

NAME Samson Omosefunmi T.N./AKA ______

ADDRESS ______ PHONE ______

SEX M DOB 12/25/56 ID# 61639 DATE 12/7/00 TIME ______

PREVIOUS COMMITTMENTS ______

DO YOU HAVE MEDICAL INSURANCE? ☐ YES ☐ NO INSURANCE COMPANY ______

| VISUAL OBSERVATION Circle Y or N (Explain all "Yes" answers) | Yes | No |
|---|---|---|
| ALLERGIES: | | |
| 1. Is inmate unconscious or showing visible signs of illness, injury, bleeding, pain or other symptoms suggesting the need for immediate emergency medical referral? If Yes, | Y | N |
| 2. Are there obvious signs of fever, jaundice, skin lesions, rash, or infection? Needle marks? Body vermin? Trauma markings, bruises? If Yes, | Y | (N) |
| 3. Does the inmate's behavior/appearance suggest the risk of sucide or assault? If Yes, | Y | (N) |
| 4. Does the inmate exhibit any signs of abnormal behavior? (e.g. tremors, sweating) If Yes, | Y | (N) |
| 5. Does the inmate appear to be under the influence of, or withdrawing from drugs or alcohol? If Yes, | Y | (N) |
| 6. Is the inmate's mobility restricted in any way due to deformity, cast, injury, etc.? If Yes, back & neck | (Y) | N |
| 7. Does the inmate have a persistent cough or appear to be lethargic? If Yes, | Y | (N) |
| **INMATE QUESTIONNAIRE** Circle Y or N (Explain all "Yes" answers) | Yes | No |
| 8. Are you taking medication for: (circle as appropriate) asthma, diabetes, (heart condition), (high blood pressure), (mental health problems), ulcers, arthritis, or other condition? If Yes, what medication? ~~AAAS~~ Anxiety pain pills | (Y) | N |
| 9. When were you last seen by a physician or at a clinic for a medical, dental or mental health condition? | (Y) | N |
| 10. Are you allergic to any medications, (foods), plants, etc.? If Yes, fish, red meat, spicy | (Y) | N |
| 11. Have you fainted or had a head injury within the last 72 hours? If Yes, | Y | (N) |
| 12. Do you have or have you been exposed to AIDS, hepatitus, TB, VD, or other communicable disease? Have you experienced lethargy, weakness, weight loss, loss of appetite, fever or night sweats? If Yes, | Y | (N) |
| 13. Have you been hospitalized by a physician or psychiatrist within the last year? If Yes, prison | (Y) | N |
| 14. Have you ever considered or attempted suicide? If Yes, | Y | (N) |
| 15. Do you have a painful dental condition? If Yes, | Y | (N) |
| 16. Are you on a specific diet prescribed by a physician? If Yes, heart | (Y) | N |
| 17. Do you use drugs and/or alcohol? What kind? ______ How often? ______ How much? ______ If yes, include types, methods, date/time of last use and problems associated with ceasing use. (e.g. convulsions) | Y | (N) |
| 18. Females: Last menstrual period ______. Are you pregnant, on birth control pills, recently delivered or aborted? If Yes, | Y | N |

**PLACEMENT RECOMMENDATION** (Check one)

☐ Emergency Room ☐ General Population ☐ Infirmary
☐ Isolation ☐ Observation ☐ Sick Call ______ Date/Time

REMARKS: ______

(Check one) MD ☐ PA ☐ NP ☐ Clinic ______ Date/time

I have answered all questions truthfully. I have been told and shown how to obtain medic[al] services. I hereby give my consent for professional services to be provided to me by a[nd] through EMSA Correctional Care.

X [signature] ______ Inmate's Signature 12/7/0[0] Date

CC 019

EMSA CORRECTIONAL CARE

INMATE NAME: Omosefunmi, Sam

I.D. NUMBER: # 61639

D.O.B.: 12/25/56

ALLERGIES: Seafood, redmeat

## PROBLEM LIST

| Date Identified | Problem No. | Chronic (Long Term) Problems | Date Resolved |
|---|---|---|---|
| 12/7/00 | 1 | HTN | |
| 12/7/00 | 2 | ↑Chol | |
| 12/7/00 | 3 | Back/neck injury (1997-2000) | |
| 12/7/00 | 4 | depression | |
| 12/7/00 | 5 | OS eye problem | |
| | | | |
| | | | |
| | | | |
| | | | |

Temporary (Usually Self-Limiting) Problems

| Prob. No. | Problem | Date of Each Occurence | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

CC 002

U.S. Department of Justice

TB Clearance ☑ Yes ☐ No

1) PPD Completed: ________ Date

Results: ________

2) CXR Completed: 10/30/00 Date

NAD

3) Health Authority Clearance: yes

12-8-00

Sign Date

Note: Dates listed above must be within one year of this transfer.

# I. PRISONER/ALIEN

Name: Omosefunmi, Samson

Prisoner/Alien Reg. # 26864 117

D.O.B.:

Departed From:

Date Departed:

Destination:

Reason for Transfer:

Dist. Name:

Dist. #

Date in Custody

II. Current Medical Problems

1. depressive D/o
2. HTN
3. dislipoproteinemia
4. neck/back p
5. OS eye prot
6. ↑ Chol

| | | | Medication Required For Care En Route |
|---|---|---|---|
| **Medication** | **Dose** | **Route** | **Instructions For Use** (Include proper time for Administering) |
| maxzide | 75/50 | PO | Am |
| trazodone | 100mg | PO | HS |
| HCTZ | 25mg | PO | Am |
| fluoxetine (prozac) | 40mg | PO | Am |
| ASA | 81 mg | PO | qd |
| KCl | 10 mg | PO | qd |
| (corbaxin) methocarbanol | 500 mg | PO | BID prn |
| Gemfibrozil (load) | 600mg | PO | Twice daily - before m |
| | | | |
| | | | |
| | | | |

Additional Comments:

Seafood, red meat

# III. SPECIAL NEEDS AFFECTING TRANSPORTATION

Is prisoner medically able to travel by BUS, VAN or CAR? ☑ Yes ☐ No If no, Why not?

Is prisoner medically able to travel by airplane? ☑ Yes ☐ No If no, Why not?

Is prisoner medically able to stay overnight at another facility en route to destination? ☑ Yes ☐ No If no, Why not?

Is there any medical reason for restricting the length of time prisoner can be in travel status? ☐ Yes ☑ No If yes, state reason:

Does prisoner require any medical equipment while in transport status? ☐ Yes ☑ No If yes, What equipment?

Sign & Print Name- Certifying Health Authority: Tina Senft

Phone Number: 717-840-7594

Date Signed: 12-8-

Original-Upon Transfer

7:11 Am

recvd 12/12/00 7:00 A

1. 
2. ✓
3. 
4. 

Name: Samsun Omosefunmi Number: 61639

Pod: Block:

Check One:

Referred: ✓ Requested:

Referred By: J. Rodgers

Reason: I/M taking prozac & trazadone for depression & anxiety. He's an INS detainee.

Request For Records Sent

Date: Time:

(Do Not Write Below This Line)

Date Seen: 12/12/00 Time: 4:00pm

Data: Pt is a 43 year old Nigerian INS Detainee. Pt referred due to taking medication for depression. Pt is confined to medical isolation due to physical problems. Pt refused to speak with myself or Dr Alm. He demands to speak to INS.

Assessment: Depression

Plan: 1) Medication ordered for 90 days
2) Continue present housing until cleared by medical

[signature] MS, NCC
Nurse Mat Coordinator

12/12/00
7:10 pm

REFERRAL FOR PSYCHOLOGICAL SERVICES

Priority:
1. ____
2. ✓
3. ____
4. ____

Date: 12/7/00

Omosefunmi
Name: Omosefunmi, Samson Number: #61639

Pod: ____ Block: Med 6

Check One:

Referred: ✓ Requested: ____

Referred By: Pittenger, RO

Reason: depression - on prozac & Trazodone

Request For Records Sent

Date: ____ Time: ____

(Do Not Write Below This Line)

Date Seen: ____ Time: ____

Data: ____

Assessment: ____

Plan: ____

EMSA CORRECTIONAL CARE

## RELOCATION/MED PASS

NAME: Amosefuntii, Samson

ID #: 61639

D.O.B.: 12/25/56

REQUEST DATE: 12/7/00

CURRENT LOCATION: Med 6

### RELOCATION TO:

☐ GP

☐ INFIRMARY ☐ FEMALE ☐ MALE

☐ FORENSIC UNIT ☐ FEMALE ☐ MALE

FORENSIC UNIT LOCATION:

Needs Cotton blanket

### MED PASS:

☐ EXTRA MATTRESS ☐ EXTRA PILLOW

☐ EXTRA BLANKET ☐ LOW BUNK

☐ COTTON BLANKET

### CONSIDERATIONS FOR HOUSING:

☐ BLIND ☐ WHEELCHAIR

☐ HEARING IMPAIRED NEED (TDY)

☐ CANE ☐ CRUTCHES

☐ MEDICAL APPLIANCE

Signature [signature] Pittenger, PA

Name Stamp

CC 033 WHITE - HEALTH RECORD CANARY - HOUSING UNIT PINK - CLASSIFICATION UNIT

EMSA CORRECTIONAL CARE

## RELOCATION/MED PASS

NAME: Amosefustini, Samson

ID #: 61639

D.O.B.: 12/25/56

REQUEST DATE: 12/7/00

CURRENT LOCATION: Med 6

### RELOCATION TO:

☐ GP

☐ INFIRMARY ☐ FEMALE ☐ MALE

☐ FORENSIC UNIT ☐ FEMALE ☐ MALE

FORENSIC UNIT LOCATION:

needs Cott[illegible] blan[illegible]

### MED PASS:

☐ EXTRA MATTRESS ☐ EXTRA PILLOW

☐ EXTRA BLANKET ☐ LOW BUNK

☐ COTTON BLANKET

### CONSIDERATIONS FOR HOUSING:

☐ BLIND ☐ WHEELCHAIR

☐ HEARING IMPAIRED NEED (TDY)

☐ CANE ☐ CRUTCHES

☐ MEDICAL APPLIANCE

Signature [signature]

Name Stamp

CC 033 WHITE - HEALTH RECORD CANARY - HOUSING UNIT PINK - CLASSIFICATION UNIT

EMSA CORRECTIONAL CARE

## RELOCATION/MED PASS

NAME: Omoefunmi, Samson

ID #: # 61639

D.O.B.:

REQUEST DATE: 12/11/00

CURRENT LOCATION: Med 6

## RELOCATION TO:

Med 2

BAU

- ☐ GP
- ☐ INFIRMARY ☐ FEMALE ☐ MALE
- ☐ FORENSIC UNIT ☐ FEMALE ☐ MALE

FORENSIC UNIT LOCATION:

## MED PASS:

- ☐ EXTRA MATTRESS ☐ EXTRA PILLOW
- ☐ EXTRA BLANKET ☐ LOW BUNK
- ☐ COTTON BLANKET

## CONSIDERATIONS FOR HOUSING:

- ☐ BLIND ☐ WHEELCHAIR
- ☐ HEARING IMPAIRED NEED (TDY)
- ☐ CANE ☐ CRUTCHES
- ☐ MEDICAL APPLIANCE

Signature [signature]

Name Stamp

CC 033 WHITE - HEALTH RECORD CANARY - HOUSING UNIT PINK - CLASSIFICATION UNIT

Physician's Order MEDIMARK II

Date 12/13/00

**Medication Orders** **Other Orders**

1 ~~clonidine~~ Klonopin 0.1mg po now refused

2 and 0.1mg po daily x 90 days (w)

3 V.O. P. Sauers MD / J Pittenger, RN

4

5

6

7 12/15/00 10a PB

8

9

10

11

12

13

14

15

16

noted: J Pittenger, RN 12/13/00 11:00 PM

0 [illegible] 12/15/00 [illegible]

Med

RNA INCORPORATED 1986

DOCTOR Sauers DIAGNOSIS #61639

Omosefunmi, Samson

MEDIMARK II

Date 12/15/00

**Medication Orders** **Other Orders**

1 Clonidine 0.1 mg po QD x 90 d

2 V.O. Dr Sauers / S Sillman

pharm notified

noted 12/15/00 SC 10:30 am

12/15/00 10a PB

3
4
5
6
7
8
9
10
11
12
13
14
15
16

BNA INCORPORATED 1986

DIAGNOSIS

Physician's Order

MEDIMARK II

Date

**Medication Orders** **Other Orders**

(1) Trazadone 100mg q HS X 90 Days
(2) methacarbamol 500mg BID X 90 Days
(3) Prozac 40mg daily X 90 Days
(4) EKG ✓
12/8/00 1 50 / mg

own meds

Noted
1405
12/8/00 MED

ORDERED
12/9/00

Samson Omosefumi

© RNA INCORPORATED 1986

DOCTOR DIAGNOSIS

Physician's Order MEDIMARK II

Date 12/7/00

**Medication Orders** **Other Orders**

ASA 81mg po QD x 90 days
KCl 10mEq QD po x 90 days
Maxzide 75/50 po QAM x 90 days
Lipid 600mg po BID x 90 days

(other meds in patient)

noted

RNA INCORPORATED 1986

DOCTOR DIAGNOSIS

EMSA CORRECTIONAL CARE

## PROGRESS NOTES

| Date/Time | Inmate Name: Samson Omosefunmi | ID # 61639 | D.O.B.: / / |
|---|---|---|---|
| 12/8/00 | S- Hx Htn ↑ lipids ⊖CAD | | |
| 1^45 | Hx injury to neck 1997 - reinjured neck Aug 20[illegible] | | |
| 130/92 | ⊖hx Fx - wears c collar | | |
| p92 r20 | Also hx pepper spray to eyes in past - uses [illegible] | | |
| T998 | O- Pt alert, NAD | | |
| | Holds neck stiffly | | |
| | chest clear Heart reg rate | | |
| | mm strength N, sym | | |
| | | | |
| | | | |
| | A- Chronic back + neck pain. | | |
| | Htn | | |
| | Hx ↑ lipids | | |
| | Pt cleared to fly on airplane | | |
| | P- meds ordered | | |
| | EKG | | |
| | [signature] | | |

CC 023

EMSA CORRECTIONAL CARE

PROGRESS NOTES

| Date/Time | Inmate Name: [illegible] | ID # | D.O.B.: / / |
|---|---|---|---|
| 12/12/00 1600 | [illegible] | | |

*Complete Both Sides Before Using Another Sheet*

CC 004

**FOR MENTAL HEALTH USE ONLY**

**EMSA CORRECTIONAL CARE**

## PROGRESS NOTES

| Date/Time | Inmate Name: Omosefunmi Sampson | ID # | D.O.B.: / / |
|---|---|---|---|
| 520pm | S- S/p fallen, unresponsive male | | |
| 12/13/00 | O- male I/m found lying prone on | | |
| | the floor of his cell c̄ his walker placed | | |
| 150/90 | around his head. I/m appeared to | | |
| (lying on | be unresponsive upon arrival but | | |
| floor) | immediately responded to verbal | | |
| P-160 | Stimuli upon entering the cell. ⊕ eye | | |
| 160/90 | lid flutter, ⊕ response to painful Stimuli | | |
| (sitting) | No marks on Ⓛ side of face which | | |
| P-104 | contacted concrete floor for unknown | | |
| resp-32 | down time. I/m lying directly next to | | |
| unlabored | 2 boxes of personal belongings c̄ nothing | | |
| but exaggerated | disturbed on top (glasses lying perfectly | | |
| | flat etc) In order for I/m to have | | |
| | "fallen" @ this particular angle of | | |
| | landing items on the box should have | | |
| | been moved @ least a little. I/m | | |
| | c/o CP but EKG is normal appearance | | |
| | lungs. clr & bilat =, pulse ox - 98 RA- | | |
| | CP is reproducable upon palpation. | | |
| | ⊖ bruising, ⊖ obvious inj, full ROM ext | | |
| | c̄ purposeful movement, ⊖ SOB ⊕ CP, | | |
| | ⊕ HA c̄ pain behind eyes, A&O-SNT, | | |
| | I/m claims lethargic when manual | | |
| | sat up. let himself fall back c̄ full | | |
| | Control | | |

CC 023

EMSA CORRECTIONAL CARE

PROGRESS NOTES

Omosefunmi

| Date/Time | Inmate Name: page 2 - Sampson | ID # | D.O.B.: / / |
|---|---|---|---|
| re ✓ | ⊖ JVD, ⊖ TD, ⊖ bleeding. Remainder | | |
| 530pm | of secondary survey unremarkable | | |
| 110/80 | Pupils Pearl A+O x 3, Glasgow Scale | | |
| 104 | A-alteration in comfort R/O false claim | | |
| 20 unl | P. I/m placed back to bed p̄ | | |
| | refusing Klonidine / claiming he is | | |
| | on a hunger strike. Remain on q15m | | |
| | med ✓. Re✓ BP in Am. | | |

CC 023

EMSA CORRECTIONAL CARE

## REFUSAL OF TREATMENT FORM

Institution: YCP

Name: Omosefunmi, Samson ID# 61639

D.O.B. ____

I, Samson Omosefunmi (Name of Inmate) have, this day, knowing that I have a condition requiring medical care as indicated below:

____ A. Refused medication.

____ B. Refused dental care.

____ C. Refused an outside medical appointment.

____ D. Refused laboratory services.

____ E. Refused X-Ray services.

____ F. Refused other diagnostic

X G. Refused physical examina

____ H. Other (Please specify)

Reason For Refusal doesn't want anyone touching him

Potential Consequences Explained ____

I acknowledge that I have been fully informed of and understand the above treatment recommendatio and the risks involved in refusing them. I hereby release and agree to hold harmless the state, statuto authority, all correctional personnel, medical/health personnel from all responsibility and any ill effects whi may result from this refusal and I shall personally assume responsibility for my welfare.

I have read this form and certify that I understand its contents.

X Walter Earhart
Witness Signature

Julie Kanedinst Hpn
Witness Signature

refused to sign
Patient Signature

12-16-00
Date

8 AM 12-16-00
Time

NOTE: A refusal by the inmate to sign requires the signatures of at least one witness in addition to that of t medical staff member.

**CERTIFICATE OF SERVICE**

I, Jacqueline M. Carolan, attorney for defendant, Jyl Hummel, hereby certify that a true and correct copy of the within Motion to Dismiss was served as set forth below.

Jacqueline M. Carolan

Jacqueline M. Carolan

Date: 3/28/01

Samson Omosefunmi
No. 026864117
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020
Plaintiff
**Via Certified Mail**
**Return Receipt Requested**

York County Prison
Warden Thomas Hogan
Deputy Warden Dennis W. Bowen
Captain Frank Kluyber, Jr.
Officer Mark Lutz
Officer Eberhart
Officer Francisco
Officer Alvarez
3400 Concord Road
York, PA 17402
Defendants
**Via U.S. Mail, Postage Prepaid**