ORIGINAL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SAMSON OMOSEFUNMI : NO:  1 : CV – 00 -2228
          Plaintiff :
  :
  :
      v. : (Judge  William W. Caldwell)
  :
YORK COUNTY PRISON, THOMAS HOGAN, :
WARDEN, DENNIS W. BOWEN, DEPUTY :
WARDEN, CAPTAIN FRANK KLUYBER, JR., :
OFFICER MARK LUTZ, OFFICER EVERHART :
OFFICER FRANCISCO, and J. HUMMEL, :
MEDICAL DIRECTOR, :
          Defendants :

FILED
HARRISBURG

APR 1 6 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

**EXHIBITS TO**
**DEFENDANTS' BRIEF IN SUPPORT**
**OF A MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**PURSUANT TO F.R.C.P. 12(B)(6)**

Donald L. Reihart, Esq.
Sup. Ct. I.D. #07421
2600 Eastern Boulevard
Suite 204
York, PA 17402-2904
Telephone (717) 755-2799

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SAMSON OMOSEFUNMI            :    NO:  1 : CV – 00 -2228
      Plaintiff            :
                               :
      v.            :    (Judge  William W. Caldwell)
                               :
YORK COUNTY PRISON, THOMAS HOGAN,  :
WARDEN, DENNIS W. BOWEN, DEPUTY      :
WARDEN, CAPTAIN FRANK KLUYBER, JR.,  :
OFFICER MARK LUTZ, OFFICER EVERHART :
OFFICER FRANCISCO, and J. HUMMEL,      :
MEDICAL DIRECTOR,            :
           Defendants

## AFFIDAVIT OF CAPTAIN FRANK KLUYBER, JR.

Captain Frank Kluyber, Jr. being duly sworn, deposes and says:

My name is Frank Kluyber, Jr.   I am a member of the staff of the York County

Prison and was employed in that capacity in December of 2000. This affidavit is based

upon my personal knowledge and information.  I am competent to testify and would state

as follows if called as a witness at trial:

1.

I am an employee of the York County Prison and was serving as a Captain at the

York County Prison in December of 2000.  I continue to be employed in that capacity at

the York County Prison.

2.

On December 11, 2000 I determined that inmate Samson Omosefunmi was located in the medical section of the York County Prison.

3.

During the day, inmate Omosefunmi insisted upon pushing an emergency buzzer when he had no medical reason for doing do.

4.

Mr. Omosefunmi was pushing the buzzer to force individuals in the vicinity to contact the Immigration Naturalization Service on his behalf.

5.

Because of the annoyance created by inmate Omosefunmi, it was determined to move him from the cell where he had access to the emergency buzzer to a cell where he did not have access to an emergency buzzer.

6.

Inmate Omosefunmi initially refused to move from one cell to the other thereby disobeying orders that were given to him. However, he eventually did move to medical cell #2 where he could not reach the emergency button.

7.

At no time did any officer of the York County Prison use unreasonable force or wrongfully assault inmate Omosefunmi.

8.

Mr. Omosefunmi did not suffer any kind of bodily injury as the result of the incident.

9.

During the conversation that I had with inmate Omosefunmi, he stated that I didn't know who he was and I would be sorry when he spoke with his lawyer. He told me that I was threatening him and I would be written up for that. I told him that no one was threatening him. He was told that if he had any problems with any situation he would be given an (801) which he was given.

10.

Mr. Omosefunmi was not denied medical treatment and did not suffer any violation of his Constitutional Rights.

11.

On December 9, 10, and 11, 2000, neither I nor correction officers Lutz, Everhart, or Francisco used force on inmate Omosefunmi or took away his wheetchair or denied him handicap showers or toilets.

_Denise Koller_
Witness

_Frank Kluyber_
Captain Frank Kluyber, Jr

Sworn or affirmed to and subscribed to before me, this _11th_ day of ~~February~~, 2001

April

_Deborah C. Keyport_
Notary Public
MY COMMISSION EXPIRES:

Notarial Seal
Deborah C. Keeports, Notary Public
Springettsbury Twp., York County
My Commission Expires July 21, 2003
Member, Pennsylvania Association of Notaries

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMSON OMOSEFUNMI | : | NO:  1 : CV – 00 -2228 |
| Plaintiff | : | |
| | : | |
| v. | : | (Judge  William W. Caldwell) |
| | : | |
| YORK COUNTY PRISON, THOMAS HOGAN, | : | |
| WARDEN, DENNIS W. BOWEN, DEPUTY | : | |
| WARDEN, CAPTAIN FRANK KLUYBER, JR., | : | |
| OFFICER MARK LUTZ, OFFICER EVERHART | : | |
| OFFICER FRANCISCO, and J. HUMMEL, | : | |
| MEDICAL DIRECTOR, | : | |
| Defendants | | |

## AFFIDAVIT OF OFFICER MARK LUTZ

Officer Mark Lutz,  being duly sworn, deposes and says:

My name is Mark Lutz.   I am a member of the staff of the York County Prison and was employed in that capacity in December of 2000. This affidavit is based upon my personal knowledge and information.  I am competent to testify and would state as follows if called as a witness at trial:

1.

On December 11, 2000 I went to Med. Cell #6 to determine why someone was pushing the emergency call button.

2.

When I arrived at the cell, inmate Omosefunmi was pushing the button.

3.

I asked him what was the emergency.

4.

He said I needed to call INS and tell them he needed to see them.

5.

I told him that the request he filled out Friday hadn't been seen and he needed to be patient.  Also, the button is for emergencies only.

6.

As I left the area, inmate Omosefunmi began repeatedly pushing the button.  I told him to stop pushing the button, he refused and called this officer a "piece of shit" and punched his cell window.   At no time was unreasonable force used on inmate Omosefunmi.

7.

On December 9, 10, and 11, 2000, neither I nor correctional officers Everhart, or Francisco used physical force on inmate Omosefunmi or took away his wheelchair or denied him handicap showers or toilets.

_Denise Koller_
Witness

_Mark Lutz_
OFFICER MARK LUTZ

Sworn or affirmed to and subscribed
to before me, this _10th_ day of
April, 2001

_Deborah C. Keeport_
Notary Public
MY COMMISSION EXPIRES:

Notarial Seal
Deborah C. Keeports, Notary Public
Springettsbury Twp., York County
My Commission Expires July 21, 2003
Member, Pennsylvania Association of Notaries

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SAMSON OMOSEFUNMI            :    NO: 1 : CV – 00 -2228
         Plaintiff                 :
                               :
         v.                         :    (Judge  William W. Caldwell)
                               :
YORK COUNTY PRISON, THOMAS HOGAN, :
WARDEN, DENNIS W. BOWEN, DEPUTY     :
WARDEN, CAPTAIN FRANK KLUYBER, JR.,   :
OFFICER MARK LUTZ, OFFICER EVERHART :
OFFICER FRANCISCO, and J. HUMMEL,     :
MEDICAL DIRECTOR,                   :
         Defendants

### AFFIDAVIT OF P. SAUERS, M.D.

P. Sowers, M.D., being duly sworn, deposes and says:

My name is P. Sowers.   I am the Medical Director of the York County Prison.  I

served in that capacity in December of 2000 and continue to serve in that capacity up to

the present time.  This affidavit is based upon my personal knowledge and information.  I

am competent to testify and will state as follows if called as a witness at trial:

1.

I am the Medical Director for the York County Prison and was serving in that capacity in December, 2000 and continue to be Medical Director for the York County Prison.

2.

I have prepared a medical summary of the care and treatment received by inmate Samson Omosefunmi, which is appended hereto. This medical summary fairly and accurately describes the medical care and treatment received by inmate Omosefunmi during the period that he was confined at the York County Prison.

3.

I am aware that inmate Omosefunmi is claiming in a federal law suit that he was denied medical treatment on about December 13, 2000, which is passed out from massive chest pains.

4.

The medical incident described by inmate Omosefunmi is documented in medical records and clearly refute his allegation that he was denied treatment. The actual care that he received is accurately described in the medical summary, appended hereto as (Exhibit A).

5.

Inmate Omosefunmi was a very uncooperative and difficult prisoner to treat. However, at no time was he denied treatment or abused in any manner.

I certify that the attached medical summary (Exhibit A) is a true copy of the designated documents.

_Denise Koller_
Witness

_P. Sauers_
P. Sauers, M.D.
Medical Director

Sworn or affirmed to and subscribed
to before me, this _12th_ day of
April, 2001

_Karen L. Saxton_
Notary Public
MY COMMISSION EXPIRES:

Notarial Seal
Karen L. Saxton, Notary Public
Springettsbury Twp., York County
My Commission Expires June 2, 2003
Member, Pennsylvania Association of Notaries

# TAB - 1

## MEDICAL SUMMARY
### Samson Omosefunmi, ID#61639

Mr. Omosefunmi is an INS detainee who was transferred to York County Prison on 12/7/00. His transfer records stated that he had a history of hypertension, dislipoproteinemia, depressive disorder and chronic neck/back pain. On his admission medical screening he stated that he had injured his back in 1997 and reinjured it in Atlanta in August 2000, and that he had problems with his left eye after being pepper-sprayed some time prior to his admission here. Because of his history of multiple medical problems, he was placed in medical housing, and his medications were prescribed based on his transfer orders. He was seen by the physician the following day. He again related the history of his neck injuries in 1997/2000, and his other medical problems. On exam, he held his neck stiffly, but there were no abnormal neurological findings. He was cleared to be transported by airplane (clearance had been requested by INS). His blood pressure and other vital signs remained normal, and he had no complaints when checked by the nursing staff. He was seen by the psychologist on 12/7; he refused to speak to either the psychologist or the psychiatrist and demanded to speak to the INS; his antidepressant was ordered. He became disruptive and demanding to the medical staff the evening of 12/11 and was placed on BAU status by a YCP Captain. He was on 15-minute checks by the officers and his vital signs were stable for the next 48 hours. He was scheduled to be seen by the psychiatrist on 12/12, but was uncooperative.

At approximately 5 p.m. on 12/13, a medical emergency was called. The inmate was found lying prone on his floor, his walker around his head. Two boxes of his belongings were sitting adjacent to him on the floor, his glasses lying undisturbed on top of one of the boxes. When checked, his eyes fluttered and there was no evidence of any injuries noted. According to the staff, had he actually fallen to the spot where he lay, the walker and belongings would have been crushed or moved. His exam was normal. He complained of chest pain; an EKG appeared normal. When sat up, the inmate would fall backward, but without injuring himself ("full control"). His blood pressure was noted to be elevated, but he refused medication ordered for him. Later that evening, he again refused medication for an elevated blood pressure, stating that "he would not eat, take medicine or accept Rx until he received papers from INS." From that time until his transfer from YCP, he frequently refused to be checked by the nursing staff and refused his medications on several occasions. He also refused to have blood work done on 12/16. When observed, he was noted to be ambulating and in no obvious distress.

In summary, Mr. Omosefunmi was examined on 12/13 for his complaints of chest pain, and his examination was normal. In addition, when nursing staff attempted to recheck the inmate, he refused both medical examinations and treatment.

P. Sauers, M.D.

2001 FEB 16  A 10:40

YORK COUNTY PRISON
RECEIVED

# York County Prison
## INDIVIDUAL ADMISSION RECORD

Date Of Admission 12/07/00    Time 19:50PM    Pouch No. 61639

Name  OMOSEFUNMI, SAMSON (I)         Alias

---

Date Committed  12-07-2000    CHARGE #01         Offenses                        Counts
Case No.        000000        00
Docket No.
DJ.                                              IMMIGRATION
OTN              000000
Hearing Date    00-00-0000
Disposition     UNKNOWN

Date Sentence   00-00-0000
Length Sentence
Earned Time
Earned Expires  00-00-0000
Credit Time
Credit Expires  00-00-0000
Minimun Expires 00-00-0000
Maximun Expires 00-00-0000
Bail/ Fine Cost
Committed By    99002  IMMIGRATION AUTHORITY
Date Released on This Charge    12-20-2000
Notes 12-20-00 TOT INS (CMC)

2/14/01

**YORK COUNTY PRISON**
**DISCIPLINARY RECORD**

10:49 AM

| NAME | POUCH # | OFFENSE DATE | TYPE/OFFENSE | DISPOSITION | SENTENCE | ELIGIBLE DATE | HEARING DATE |
|------|---------|--------------|--------------|-------------|----------|---------------|--------------|
| OMOSIFUMMI, SAMSON | 61639 | 12/11/00 | DISRESPECT<br>REFUSING AN ORDER<br>ABUSIVE LANGUAGE | FOUND GUILTY | 7 DAYS 23 HR. LOCKIN | 12/18/00 | 12/13/00 |
| WALLACE, DANNY | 60852 | 2/3/01 | REFUSING AN ORDER | FOUND GUILTY | 10 DAYS POD RESTRICTION | 2/14/01 | 2/5/01 |
| WALLACE, DANNY | 60852 | 1/6/01 | ABUSIVE LANGUAGE<br>DISRESPECT<br>MEDICAL INTERFERENCE | FOUND GUILTY<br><br>ADMITS GUILT | 7 DAYS 23 HR. LOCKIN | 1/13/01 | 1/8/01 |
| WALLACE, DANNY | 60852 | 10/31/00 | REFUSING AN ORDER<br>ENCOURAGING GROUP ACTIVITY<br>ABUSIVE LANGUAGE | ADMITS GUILT<br>FOUND GUILTY<br>" | 10 DAYS 23 HR. LOCKIN | 11/10/00 | 11/3/00 |
| WALLACE, DANNY | 60852 | 10/18/00 | REFUSING AN ORDER<br>ABUSIVE LANGUAGE<br>DISRESPECT | ADMITS GUILT | 3 DAYS 23 HR. LOCKIN | 10/20/00 | 10/20/00 |

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMSON OMOSEFUNMI | : | NO:  1 : CV – 00 -2228 |
| Plaintiff | : | |
| | : | |
| v. | : | (Judge  William W. Caldwell) |
| | : | |
| YORK COUNTY PRISON, THOMAS HOGAN, | : | |
| WARDEN, DENNIS W. BOWEN, DEPUTY | : | |
| WARDEN, CAPTAIN FRANK KLUYBER, JR., | : | |
| OFFICER MARK LUTZ, OFFICER EVERHART | : | |
| OFFICER FRANCISCO, and J. HUMMEL, | : | |
| MEDICAL DIRECTOR, | : | |
| Defendants | | |

## AFFIDAVIT OF DONALD L. REIHART, ESQUIRE

Donald L. Reihart, being duly sworn, deposes and says:

My name is Donald L. Reihart.  I am the Assistant County Solicitor for York County.  Since 1992, and up to the present time, I have served as Assistant Solicitor for York County.  This affidavit is based upon my personal knowledge and information.  I am competent to testify and would state as follows if called as a witness at trial:

1.

I am the Assistant Solicitor for York County and was serving in that capacity in December, 2000 and continue to be an Assistant County Solicitor for York County.

2.

In December, 2000 and up to the present time, the York County Prison had a grievance in effect. A copy of the Grievance System, marked Exhibit "A", is appended hereto and made a part hereof.

3.

I am custodian of all of the Appeals (806 Solicitor Reviews) of the grievances filed by the inmates.

4.

I am also custodian of any appeals taken directly to the Chairman of the York County Prison Board. (Inspectors of the York County Prison)  The administrative system in place at the York County Prison requires an inmate to exhaust the system by timely taking all reviews and appeals provided for in the system.

5.

Inmate Samson Omosefunmi did not utilize the administrative procedures available at the York County Prison to address the issues raised in a complaint filed to Civil Case 1:00-CV-2228 thereby failing to exhaust all reviews and appeals that were available to correct the prison conditions alleged in his civil action. A copy of the (801) (inmate complaint) filed by Omosefunmi, is appended as Exhibit "B".

6.

The administrative response filed after the inmate filed the within Civil action and before the administrative process was complete is set forth as Exhibit "C".

7.

Plaintiff Omosefunmi did not appeal the decision dated February 12, 2001 as required by the grievance procedures in place at the York County Prison and therefore did not exhaust administrative remedies that were available to him.

7.5

In response to the receipt of the Solicitor's review and notice of his appellate rights, Omosefunmi returned the document and stated he wanted no further direct communication from the Solicitor. See Exhibit "D" appended hereto.

8.

Inmate Omosefunmi did not file an inmate complaint (801) to question the adequacy of the medical care that he received from the Defendant Hummel or the Defendant Jane Doe.

9.

I certify that the attached Exhibits A, B, C, and D are true copies of the designated documents.

_Denise Koller_
Witness

_Donald L. Reihart_
Donald L. Reihart
Assistant Solicitor

Sworn or affirmed to and subscribed to before me, this _11th_ day of April, 2001

_Deborah C. Keeports_
Notary Public
MY COMMISSION EXPIRES:

Notarial Seal
Deborah C. Keeports, Notary Public
Springettsbury Twp., York County
My Commission Expires July 21, 2003
Member, Pennsylvania Association of Notaries

# TAB - 2

## AMENDMENT TO PROCEDURES MANUAL FOR THE YORK COUNTY PRISON

WHEREAS, the York County Prison Board has full authority by virtue of the Act of January 25, 1966, P.L. (1965) 1577 § 2; 61 P.S. § 409, as amended, to make rules and regulations for the government and management of the Prison, and the safekeeping, discipline and employment of the prisoners as may be deemed necessary; and

WHEREAS, the York County Prison Board has determined to adopt Prisoner Grievance Procedures to assure full, fair and just evaluation and determination of prisoner grievances;

NOW, THEREFORE, the following Grievance Procedures and Inmate Complaint Review System is established for the York County Prison:

# YORK COUNTY PRISON GRIEVANCE PROCEDURES

**3-ALDF-3E-11**
**(modified)**

## INMATE COMPLAINT REVIEW SYSTEM (CRS) OF "801"

### PURPOSE:

The Complaint Review System (CRS) is intended as a formal and objective review of the complaints by residents at the York County Prison in order to remedy specific situations (when necessary) and to help identify procedural problem areas at this institution. Complaints will be submitted on an "801" form and known as a "Complaint" or "801."

### STRUCTURE

All resident complaints are to be directed (in writing) to the designated "Complaint Supervisor." The Complaint Supervisor. The complaint supervisor is responsible to, and reports directly to, the Deputy Warden for Treatment of the York County Prison.

Appeals arising in the CRS process shall be reviewed by the Deputy Warden of the York County Prison. If the complainant is dissatisfied with the initial appeal determination, a screening review may be requested. A County Solicitor, designated by the County Prison Board, shall perform the screening review following the established guidelines and may recommend a review of the case by the Complaint Review Board.

### GENERAL PROVISIONS

A.  The Deputy Warden, or the Appeals Board, outlined in the above section may at any time:

   1.  Dismiss or order held in abeyance, any complaint filed in this system which is being litigated in court.

   2.  Dismiss or order held in abeyance, any complaint involving subject matter which he (or it) deems appropriate for consideration only by a court or other established and available form.

B.  No resident shall be disciplined for filing a complaint, or otherwise pursuing a remedy in this complaint system, but no immunity is afforded herein to any person from civil or criminal liability for any of his/her acts or statements.

C. The C___ will not deal with complaints (801's) in the following areas:

1. Complaints which seek to challenge or have reviewed, the proceedings of a disciplinary hearing or parole hearing.

2. Attempt to obtain instructional privileges without first having applied for the privilege through the use of normal instructional procedure. (request form)

3. Complaints about other inmates unless it deals with an injury or threat of injury.

D. The procedure described herein shall be followed as closely as possible. However, it is recognized that in particular cases, some reasonable modification of the procedure will be necessary and proper. Priority will be given to emergency cases where deemed appropriate.

## INSTRUCTIONAL LEVEL:

A. No complaints will be entertained from a group or representatives of a group. All complaints are to be on an individual basis only.

B. All complaints shall be made in writing (legible) on the complaint form provided for this purpose which shall be made readily available from Officers or Counselors to all Inmates. The signed complaint form shall be deposited in a slip box or at the Central Control Desk, and shall be picked up each morning by the Complaint Supervisor at 9 a.m. (Excluding Saturdays, Sundays and Holidays). Female complaints are to be delivered to the Complaint Supervisor by the Officer, at the time the complaint form is received, if during weekdays - 8 a.m. to 4 p.m., otherwise forms deposited for handling shall be delivered at the start of the next regular business hours.

C. The Warden of the York County Prison will designate a member of his staff to act as the Complaint Supervisor. The Complaint Supervisor is the personal representative of the Warden in complaint matters and the Warden will take measures to insure the complaint supervisor receives full cooperation from the institutional staff.

D. The Complaint Supervisor:
(see - "Complaint Supervisor, definition of the position" in this section)

E. RECORD KEEPING AND PROCEDURAL GUIDELINES FLOW CHART FOR PRISONER COMPLAINTS:

1. All complaints received are to be written on the designated form. The complaint should be printed or written clearly - an illegible complaint will be returned to the sender with a notation to resubmit. An illegible complaint will not receive a registration number in the CRS. Complaints should be directed to the Complaint Supervisor. All complaints (except those that are illegible) are to be registered. Those complaints not within the realm of the system will be reported to the complainant as such.

2. Complaints are to be sent, daily, at 9 a.m., Monday through Friday, to the Complaint Supervisor through the Central Control Desk. The complaints from females are to be delivered to the Complaint Supervisor's Office by the Matron upon receipt of the complaint or as soon as possible thereafter.

3. Upon receipt of a complaint, the Complaint Supervisor will assign a registry number and enter that number, the date received, the name of the complainant, and other information requested in the complaint register. Once a registry number is assigned, it becomes THE method of identification of the complaint, throughout the system, and should be included on every form relating to the complaint.

4. The Complaint Supervisor shall proceed to investigate the complaint (interviews, etc.) And shall provide a form to all staff members, or other individuals working in the institution, mentioned in the complain, in order that they may report their involvement with the complainant. The staff member is to respond to the Complaint Supervisor within forty-eight (48) hours of receipt of the form.

5. After review by the Complaint Supervisor, of all factors that he deems relevant to the complaint, he shall file a written report containing a written summary of the facts as they appear to him, what steps or measures he has taken, the results he has achieved, the conclusions he has formed, and his recommendations. This written summary and recommendations shall be delivered to the Deputy Warden for Treatment with copies to the complainant and all staff members mentioned in the complaint, no later than ten (10) working days after receipt of the complaint.

6. If there is an objection by any party to the recommendation of the Complaint Supervisor, that party my file an appeal, within five (5) days of the issuance of the report. If there is no appeal, by the parties involved, the recommendation is implemented and where appropriate, an administrative directive issued on the subject. The Deputy Warden is to reply to all concerned parties and the Complaint Supervisor, within twenty-one (21) days of the appeal notice.

7. If any party disagrees with the decision of the Deputy Warden, an appeal to the Solicitor, for relief or determination by the Complaint Review Board, shall include a statement that the appeal is not being made without valid grounds and the reasons for granting the appeal and relief requested shall be set forth in writing.

8. Upon final disposition of a complaint, the packet of forms consisting of: the original complaint, acknowledgment, staff reports, the report of the Complaint Supervisor, and a copy of the appeals proceedings are to be filed numerically by the registry number.

F. Requests for Administrative Staff Interview:

All requests for an interview with an Administrative Staff member must be on the "Request Form" provided and must include some indication of the reason for the request.

Do not use an "801" form as a "Request."

APPEALS

A. Review by the Deputy Warden

1. A request for review must be made in writing, on the form provided, to the Deputy Warden.

2. The request for appeal shall be delivered to the Complaint Supervisor in the same manner as complaints, at which time the request shall be recorded, and the Deputy Warden notified by the Complaint Supervisor.

3. Within twenty-one (21) days of the receipt of a request for appeal, the Deputy Warden shall affirm, modify or reverse the decision of the Complaint Supervisor, or hold in abeyance those matters being litigated in Court.

4. The Deputy Warden will provide copies of its decision to the resident complainant, the Complaint Supervisor and staff members or departments involved in the complaint, *if requested.*

B. Review by the County Solicitor

1. A request for a review of the Deputy Warden's decision must be made in writing and shall be forwarded to the county Solicitor <u>within three (3) days.</u>

2. The County Solicitor shall within thirty (30) days make a determination concerning the merit of the appeal and notify the complainant, the Warden and Deputy Warden of his decision, following these standards:

(a) Decisions of the Warden on de minimis matters, not involving alleged violations of constitutional rights, shall be affirmed unless the decision is contrary to a policy, standard, or directive of the County Prison Board. If any unusual, or potentially harmful matter is raised in such appeal, suggesting that any part of the Prison operation presents a risk of harm to any person, it shall be reported to the Prison Board.

(b) Decisions involving constitutional rights and 42 U.S.C.§ 1983 violations, whether alleged or not, may be recommended to the Prison Board for assignment to the Complaint Review Board, if the Solicitor finds some evidence to warrant a belief that such a violation has occurred. If the Prison Board concurs in the recommendation, the case shall be heard by the Complaint Review Board.

(c) Documented, serious bodily injury to any person, not self-inflicted, caused by any means shall automatically be forwarded by the Solicitor (notice to the Prison Board shall be given promptly) for investigation and find of responsibility by the Complaint Review Board.

(d) Reported death of any prisoner, or any life-threatening injury, wether the subject of a grievance or not, shall be forwarded to the Complaint Review Board with notice to the Prison Board. The Prison Board may request the District Attorney to assign a County Detective to investigate the matter, or some other police agency may be requested, alone or in conjunction with the District Attorney's Office, to investigate the matter. In general, the Prison Board may, at any time, upon request of the Solicitor or the Complaint Review Board, request assistance from the District Attorney's Office in investigating any matter brought before the Board.

142

C. Notice of Review

1. Grievances dealing with use of unreasonable force, threat of unreasonable force or commission of any crime, shall be forwarded to the Solicitor for review and reporting to the Prison Board, regardless of the disposition.

2. Grievances dealing with racial slurs, actual or threatened discrimination, shall be forwarded to the Solicitor for review and reporting to the Prison Board, regardless of the disposition.

3. Any grievance or category of grievance, shall be upon request of the Solicitor, forwarded to the solicitor for review and reporting to the Prison Board, regardless of the disposition.

## COMPLAINT REVIEW BOARD

A. Composition:

The Complaint Review Board shall be composed of a member of the Prison Board, the Warden or his designated replacement, and a civilian representative approved by the Prison Board, who shall serve for a four-year term. Such a representative may serve successive terms.

B. Legal Support

The County Solicitor shall provide legal support to the Complaint Review Board, and shall act as an impartial legal advisor to the Board. The Solicitor shall perform direct examination of witnesses, present such evidence as deemed appropriate, and assist the Complaint Review Board in making findings and recommendations.

C. Practice and Procedure

1. Rules of Evidence.

Strict rules of evidence shall not apply. Any item or matter which is relevant and material to the matter under consideration, may be considered by the Complaint Review Board.

2. Discovery.

The Complaint review Board's purpose is to obtain as much information concerning the subject matter as possible and may determine to allow a prisoner, or his representative, to have access to the matters investigate, if such access is approved by the Solicitor, and does not violate any privilege or jeopardize or inhibit any criminal investigation.

3. Right of Counsel.

Any Complainant shall have the right to be present before the complaint Review Board in person, or at the Complainants's cost, by counsel.

4. Record.

A verbatim record shall be made of all proceedings.

D.  Jurisdiction

The Complaint Review Board shall have the jurisdiction outlined in these rules and may make recommendations to the York County Prison Board to rectify any damage or injury determined to be the potential responsibility of the County of York, or any of its Officials or employees.  This section does not waive any governmental immunities of any kind provided by statute or case law, both federal and state, and any portion of this Ordinance which would in any way limit the immunities provided by law shall, to such extent, be void and unenforceable.

Recommendations shall be based upon the evidence and shall endeavor to provide a just resolution of al grievances or matters investigated and may include, but shall not be limited to:

1.  Monetary damages in a fixed amount;
2.  Alternative dispute resolution;
3.  Changes in procedure
4.  Disciplinary action;
5.  Any equitable or legal relief deemed appropriate.

E.  Hearings Shall Be Open

The Complaint Review Board shall open all hearings to the public, except that for cause shown, any portion of the hearing or matters that could impair security at the Prison, or which involves and could impair or jeopardize any pending criminal investigations, may be closed from public view upon the request of any member of the board, the Complainant, District Attorney, Attorney General, or other interested persons.

F.  Final Review

1.  The recommendations of the Complaint Review Board shall be made to the York County Prison Board.  The Prison Board may accept the findings and recommendations, modify them according to any new evidence or information not brought before the Complaint Review Board, or to examine the matter independently, on the basis of the written record, additional information, and arguments of counsel, and thereafter make such findings and recommendations to the County Commissioner's, as may be appropriate.

2.  The County's Risk Management and Insurance programs shall be integrated whenever possible with this grievance procedure.

144

## COMPLAINT SUPERVISOR

<u>(Definition of Position)</u>

<u>REQUIREMENTS:</u>

1. The Complaint Supervisor must be currently employed at the York County Prison, and not on probationary status.

2. The Complaint Supervisor is appointed by the Warden of the York County Prison.

<u>DUTIES:</u>

1. The Complaint Supervisor is charged with the collection and processing of all Inmate complaints properly entered into the Complaint Review System.

2. The Complaint Supervisor will investigate each complaint, keep accurate records relating to each complaint, and provide written reports for each complaint relating to action taken or recommendations made.

3. The Complaint Supervisor shall report to and is responsible to the Deputy Warden for Treatment of the York County Prison.

4. The Complaint Supervisor may be the Deputy Warden for Treatment. In the event the Deputy Warden for Treatment is acting as the Complaint Supervisor, he shall report to the Deputy Warden for Security.

<u>AUTHORITY</u>

1. The Complaint Supervisor has the authority to:

   a. Question all staff members, Inmates, or other personnel working within the Prison setting relative to the circumstances of a given complaint.

   b. Direct any staff member, other personnel, or Inmate to file a written report relating to their specific knowledge or involvement relative to an incident entered into the Complaint Review System.

   c. Examine any evidence and records relating to the area of the complaint.

   d. Exercise broad flexibility and discretion in dealing with a complaint.

# York County Prison Inmate Complaint (801)

Date submitted: _____

To: Complaint Supervisor          From: _____

_____ (Inmates Name)

(Block)          (Pod)          (Cell)

### Instructions:

1.  Before writing this complaint, please take any possible action to resolve this to resolve this matter, Contact your Block Officer, ask for a Supervisor, or put in a request to your Counselor On many occasions your problem can and will be quickly resolved. Use the 801 Form as the last resort.

2.  You will usually receive an interview with the Complaint Supervisor within a few days. You may also receive a written response. In any case, you will receive a response within ten (10) days.

3.  If more than one person writes the same complaint at the same time, a representative will be chosen.

4.  Do not use this form:

    (a) As a request or suggestion.*
    (b) As a "petition" (more than one person signing).*
    (c) As a "grievance" against any other inmate(s).*
    (d) For matters concerned with the challenge of, or review of, disciplinary action.*

* Use a request form for the above-mentioned reasons.

State Your Complaint: _____

DO NOT WRITE BELOW THIS LINE. USE REVERSE SIDE IF NECESSARY

_____

(Name)          (Date)

146

**TAB - 3**

RECEIVED
12/14/00

York County Prison – Inmate Complaint (801)

KØC 12/15

Date Submitted: _DEC. 9TH, 2000_

To: Complaint Supervisor     From: SAMSON OMOSEFUNMI
                                    (Inmate's Name)

MEDICAL                          6-E
(Block)        (Pod)           (Cell)

Instructions:
1. Before writing this complaint please take any possible action to resolve this matter. Contact your Block Officer, ask for a Supervisor, or put in a request to your Counselor. On many occasions your problem can and will be quickly resolved. Use the 801 as the last resort.
2. You will usually receive an interview with the Complaint Supervisor within a few days. You may also receive a written response. In any case, you will receive a response within 10 days.
3. If more than one person writes the same complaint at the same time, a representative will be chosen.
4. Do not use this form:
   (a) As a request or suggestion.
   (b) As a "petition" (more than one person signing).
   (c) As a "grievance" against any other inmate(s).
   (d) For matters concerned with challenge of or review of disciplinary action.
   Use a Request Form for the above.

State your complaint:
THIS FACILITY HAS NOT PROVIDED ME WITH HANDICAPPED SHOWER, NO PHYSICAL THERAPEUTIC TREATMENTS, NO THERAPEUTIC FOOD DIETS, AND NO ADEQUATE MEDICAL TREATMENTS, INCLUDING ACCESS TO MEDICATIONS DUE TO MY PHYSICAL CONDITION, AND OTHER MEDICAL PROBLEMS.

NEEDS ACCESS TO ALL MY LEGAL PAPERS, AND LAW LIABRARY TO ENABLE ME PREPARE AND FILE MY PETITION FOR REVIEW IN THE FIRST CIRCUIT COURT, BOSTON, MASSACHUSETTS, AS ORDERED BY THE HON. U.S. DISTRICT COURT JUDGE ON 12/8/00, IMMEDIATELY.

NEEDS TO BE MOVED OUT OF SOLITARY CONFINEMENT A TO MY MENTAL HEALTH CONDITION, BECUASE I'M BEING SUBJECTED PHYSICAL AND PSYCHOLOGICAL TORTURE, I'M ALREADY SUFFERING FR DEPRESSIVE DISORDERS AND ANXIETY DISORDERS.

DO NOT WRITE BELOW THIS LINE. USE REVERSE SIDE IF NECESSARY

The shower in Medical is handicaped shower. Not sure what t Inmate means by theraputic food. Inmate was recving meds

(Name)                                (Date

he needs to see someone, he can not leave med due to his

# THE COUNTY COMMISSIONERS OF YORK COUNTY



**BOARD OF COMMISSIONERS**
CHRISTOPHER B. REILLY, PRESIDENT
JAMES F. DONAHUE
SHIRLEY L. GLASS

**SOLICITORS**
DAVID S. CRAUN
DONALD L. REIHART

ADMINISTRATOR-CHIEF CLERK
CHARLES R. NOLL

COUNTY ADMINISTRATIVE OFFICES
One West Marketway, 4th Floor
York, Pennsylvania 17401
(717) 771-9614
FAX (717) 771-9804

February 12, 2001

Samson Omosefunmi
#026864117
4250 Federal Drive
Apt. #A1-136
Batavia, NY 14020

> **RE:   Solicitor's Review – Samson Omosefunmi
> Complaint Register No. 121900B-0108**

Dear Mr. Omosefunmi:

The following constitutes a response to the appeal that you filed from the determination made by Deputy Warden Bowen on January 17, 2001.

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by inmate Samson Omosefunmi. The date of the appeal is January 22, 2001.

In this appeal, inmate Samson Omosefunmi, filed an Inmate Complaint Form 801 on December 14, 2000. In his Complaint Form, the inmate refers to a "kangaroo panel" which disciplined him for an incident that occurred on December 11, 2001. This incident involved conduct by inmate Samson Omosefunmi that attracted the attention of multiple correction officers. The inmate apparently had been placed in a medical cell and insisted on pushing the emergency buzzer repeatedly to force the officers to contact the Immigration and Naturalization Service.

He was told _repeatedly_ that he should not be pushing the buzzer but refused to stop this action. The inmate was given an order to move from the medical cell where he had access to the emergency buzzer to another medical cell where he did not have access to the emergency buzzer.

Samson Omosefunmi
February 12, 2001
Page Two

The inmate refused to move and required repeated orders to move from the cell where he had access to the emergency buzzer to the medical cell where he did not have access to the emergency buzzer. This confrontation resulted in disciplinary charges being filed involving disrespect, refusing an oral order, and using abusive or obscene language. The inmate, who apparently chose not to attend the disciplinary hearing, was found guilty on all of the three charges and was sentenced to seven days at 23-hour lockin.

The inmate also complains that during this incident, he was physically and verbally assaulted by the corrections officers. He claims he was ". . . pelted with racial epithetics and threatened with bodily harm because he was a Nigerian." He indicates that the correction officer said to him, "You fuckin Nigerian." He claims he responded with "Thank you," and ends his 801 with this request for relief:

> "If your officers do not refrain for assaulting me, both physically and verbally, I will seek redress in the U.S. District Court immediately."

There is no evidence that the inmate was, in fact, assaulted, and his medical records do not reveal any indication of injury arising from the incident of December 11, 2000.

Deputy Warden Roger Thomas, in passing upon the prisoner's request for review, stated as follows:

> "You entered this system on 12/07/00, and from almost the moment you entered the prison, you did everything you could to be 'victimized.' You almost immediately went on a hunger strike, cursed out all officers, refused medical attention, refused the officer's orders, and refused to attend the Disciplinary Committee. No one, absolutely no one, threatened, cursed, assaulted, or in any way, violated any of your rights. Until you left the prison on 12/20/00, you behaved like a child and 'shotgunned' allegations of abuse without regard for the truth."

In taking his second appeal, the inmate, in response to the comments of Deputy Warden Roger Thomas, writes:

> "Firstly, all the interjections and opinions or suggestions are not needed and necessary by Deputy Warden Roger S. Thomas, because it's 'non-sensical', 'absurdity,' 'foolishly,' and 'speculative.'

Samson Omosefunmi
February 12, 2001
Page Three

Secondly, Deputy Warden Roger S. Thomas is nothing but a 'bald face racist' who will see the wrath of God someday."

In passing on this complaint, Deputy Warden Dennis W. Bowen writes:

"The officers did offer to take you to your disciplinary hearing in a wheelchair and you refused to go because you called the hearing committee a 'kangaroo court.'

You were not 'assaulted' as you allege. There was no use of excessive force.

The case you cite involving another inmate/detainee and other staff is an issue that has no bearing whatsoever on your complaint, as that is an issue that has been and is being dealt with on its own merits. I believe that your bogus claims and allegations are nothing more than an attempt to obtain a free dollar and/or asylum in the United States. You were at York County Prison for a period of thirteen days and was treated with anything but abuse. Your claims were investigated and found to be without merit. Your appeal is therefore denied."

In the appeal to the Solicitor, the inmate writes as the basis for relief:

"First, Dennis Bowen (Deputy Warden), you are nothing but 'a blood sucker,' and 'bald face racist' who will see the wrath of God someday because your written statements consists of 'foolishness' talks.

Perhaps you don't know your history. What kind of 'asylum and/or free dollar' will a 'real black man' need in his 'Great Ancestors' land? which their sweaty and unpaid labors built this shiny United States of America as being called now.

Lastly, you Dennis Bowen, the European man is the one that will needs and needed 'asylum' in this land, and will surely needs 'free dollar' to defend yourself when I'm through with you in the Federal Court.

In any event, 'a wise man has no more conversations with foolish persons.'"

Samson Omosefunmi
February 12, 2001
Page Four

## DISCUSSION AND DETERMINATION

The appeal documents confirm that the inmate's complaint was investigated thoroughly.

There is no evidence to confirm that the inmate suffered physical abuse. Even assuming that his complaints of verbal abuse occurred as he alleged, there is no basis to conclude that this prisoner's complaint constituted a violation of his constitutional rights. It is noted that all of the evidence in the file suggests that it was the prisoner who was verbally assaulting the correction officers, rather than as alleged by the inmate.

The records also confirm that the inmate is no longer housed at the York County Prison. His request that the officers be refrained from verbally abusing him not only is an unjustified request; it is also rendered moot because of his absence from the prison.

There is no basis for referring this matter to the Complaint Review Board.

Appeal denied.

Notice of appellate rights: You may appeal this decision by writing a letter, explaining reasons why your request or claim should be granted. The letter should be addressed to: President, York County Prison Board, One Marketway West, 4th Floor, York, Pennsylvania 17401.

Sincerely,

Donald L. Reihart
Assistant County Solicitor

DLR/klg

# TAB - 4

Donald L. Reihart
Asst. County Solicitor
York County Board Of Commissioner
1 West Marketway, 4th Floor
York, PA., 17401

Samson Omosefunmi
#026864117
4250 Federal Drive
Batavia, NY., 14020
March 23rd, 2001.

RE: SAMSON OMOSEFUNMI
      Complaint #:121900B-0108

Dear Mr. Reihart,

          This will be my formal request for you and
your office to immediately stop any further direct communica-
tion with me, due to the fact that this case is presently in
civil litigation pending in the U.S. District Court, Middle
District of Pennsylvania, under docket #:1:00-CV-02228, in the
matter of Omosefunmi Vs. York County Prison, et., al.

          Accordingly, stop any further direct communi-
cation with me and any further communication should be done
through the Court, because once the judicial process has takes
it's cause, such process should not be disturbed.

          Henceforth, any more direct communication will
be construed as an attempt to buy my silence; an act of intimi-
dation; and attempt to force me to drop my present civil law-
suit against the York County prison and it's staff members,
which will constitute an "obstruction of justice".

          Thank you for your prompt attention to this
matter.

                              Sincerely,

                              3/23/01
                              Samson Omosefunmi, Pro Se

cc:
    Clerk of Courts
    U.S. District Court
    Middle District of Pennsylvania
    U.S. COURTHOUSE
    228 Walnut Street
    P.O. Box 983
    Harrisburg, PA., 17108

# THE COUNTY COMMISSIONERS OF YORK COUNTY



**BOARD OF COMMISSIONERS**
CHRISTOPHER B. REILLY, PRESIDENT
JAMES F. DONAHUE
SHIRLEY L. GLASS

**SOLICITORS**
DAVID S. CRAUN
DONALD L. REIHART

ADMINISTRATOR-CHIEF CLERK
CHARLES R. NOLL

COUNTY ADMINISTRATIVE OFFICES
One West Marketway, 4th Floor
York, Pennsylvania 17401
(717) 771-9614
FAX (717) 771-9804

February 12, 2001

Samson Omosefunmi
#026864117
4250 Federal Drive
Apt. #A1-136
Batavia, NY 14020

RE:    **Solicitor's Review – Samson Omosefunmi**
       **Complaint Register No. 121900B-0108**

Dear Mr. Omosefunmi:

The following constitutes a response to the appeal that you filed from the determination made by Deputy Warden Bowen on January 17, 2001.

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by inmate Samson Omosefunmi. The date of the appeal is January 22, 2001.

In this appeal, inmate Samson Omosefunmi, filed an Inmate Complaint Form 801 on December 14, 2000. In his Complaint Form, the inmate refers to a "kangaroo panel" which disciplined him for an incident that occurred on December 11, 2001. This incident involved conduct by inmate Samson Omosefunmi that attracted the attention of multiple correction officers. The inmate apparently had been placed in a medical cell and insisted on pushing the emergency buzzer repeatedly to force the officers to contact the Immigration and Naturalization Service.

He was told <u>repeatedly</u> that he should not be pushing the buzzer but refused to stop this action. The inmate was given an order to move from the medical cell where he had access to the emergency buzzer to another medical cell where he did not have access to the emergency buzzer.

Samson Omosefunmi
February 12, 2001
Page Two

The inmate refused to move and required repeated orders to move from the cell where he had access to the emergency buzzer to the medical cell where he did not have access to the emergency buzzer. This confrontation resulted in disciplinary charges being filed involving disrespect, refusing an oral order, and using abusive or obscene language. The inmate, who apparently chose not to attend the disciplinary hearing, was found guilty on all of the three charges and was sentenced to seven days at 23-hour lockin.

The inmate also complains that during this incident, he was physically and verbally assaulted by the corrections officers. He claims he was ". . . pelted with racial epithetics and threatened with bodily harm because he was a Nigerian." He indicates that the correction officer said to him, "You fuckin Nigerian." He claims he responded with "Thank you," and ends his 801 with this request for relief:

> "If your officers do not refrain for assaulting me, both physically and verbally, I will seek redress in the U.S. District Court immediately."

There is no evidence that the inmate was, in fact, assaulted, and his medical records do not reveal any indication of injury arising from the incident of December 11, 2000.

Deputy Warden Roger Thomas, in passing upon the prisoner's request for review, stated as follows:

> "You entered this system on 12/07/00, and from almost the moment you entered the prison, you did everything you could to be 'victimized.' You almost immediately went on a hunger strike, cursed out all officers, refused medical attention, refused the officer's orders, and refused to attend the Disciplinary Committee. No one, absolutely no one, threatened, cursed, assaulted, or in any way, violated any of your rights. Until you left the prison on 12/20/00, you behaved like a child and 'shotgunned' allegations of abuse without regard for the truth."

In taking his second appeal, the inmate, in response to the comments of Deputy Warden Roger Thomas, writes:

> "Firstly, all the interjections and opinions or suggestions are not needed and necessary by Deputy Warden Roger S. Thomas, because it's 'non-sensical', 'absurdity,' 'foolishly,' and 'speculative.'

Samson Omosefunmi
February 12, 2001
Page Three

Secondly, Deputy Warden Roger S. Thomas is nothing but a 'bald face racist' who will see the wrath of God someday."

In passing on this complaint, Deputy Warden Dennis W. Bowen writes:

"The officers did offer to take you to your disciplinary hearing in a wheelchair and you refused to go because you called the hearing committee a 'kangaroo court.'

You were not 'assaulted' as you allege. There was no use of excessive force.

The case you cite involving another inmate/detainee and other staff is an issue that has no bearing whatsoever on your complaint, as that is an issue that has been and is being dealt with on its own merits. I believe that your bogus claims and allegations are nothing more than an attempt to obtain a free dollar and/or asylum in the United States. You were at York County Prison for a period of thirteen days and was treated with anything but abuse. Your claims were investigated and found to be without merit. Your appeal is therefore denied."

In the appeal to the Solicitor, the inmate writes as the basis for relief:

"First, Dennis Bowen (Deputy Warden), you are nothing but 'a blood sucker,' and 'bald face racist' who will see the wrath of God someday because your written statements consists of 'foolishness' talks.

Perhaps you don't know your history. What kind of 'asylum and/or free dollar' will a 'real black man' need in his 'Great Ancestors' land? which their sweaty and unpaid labors built this shiny United States of America as being called now.

Lastly, you Dennis Bowen, the European man is the one that will needs and needed 'asylum' in this land, and will surely needs 'free dollar' to defend yourself when I'm through with you in the Federal Court.

In any event, 'a wise man has no more conversations with foolish persons.'"

Samson Omosefunmi
February 12, 2001
Page Four

## DISCUSSION AND DETERMINATION

The appeal documents confirm that the inmate's complaint was investigated thoroughly.

There is no evidence to confirm that the inmate suffered physical abuse. Even assuming that his complaints of verbal abuse occurred as he alleged, there is no basis to conclude that this prisoner's complaint constituted a violation of his constitutional rights. It is noted that all of the evidence in the file suggests that it was the prisoner who was verbally assaulting the correction officers, rather than as alleged by the inmate.

The records also confirm that the inmate is no longer housed at the York County Prison. His request that the officers be refrained from verbally abusing him not only is an unjustified request; it is also rendered moot because of his absence from the prison.

There is no basis for referring this matter to the Complaint Review Board.

Appeal denied.

Notice of appellate rights: You may appeal this decision by writing a letter, explaining reasons why your request or claim should be granted. The letter should be addressed to: President, York County Prison Board, One Marketway West, 4th Floor, York, Pennsylvania 17401.

Sincerely,

Donald L. Reihart
Assistant County Solicitor

DLR/klg

<u>CERTIFICATE OF SERVICE</u>

I, Donald L. Reihart, Esquire certify that a true and correct copy of the foregoing

EXHIBITS TO DEFENDANTS' BRIEF IN SUPPORTOF A MOTION TO DISMISS

PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) was caused to be served

on the date shown below by depositing same in the United States mail, first-class,

postage prepaid thereon, addressed as follows:

> Samson Omosefunmi
> #026864117
> 4250 Federal Drive
> Batavia, NY  14020

> Respectfully submitted,

> By: _____
> Donald L. Reihart, Esq.
> Sup. Ct. I.D. #07421
> 2600 Eastern Boulevard
> Suite 204
> York, PA 17402-2904
> Telephone (717) 755-2799

Dated: 4-16-0 f                    Assistant Solicitor for York County